UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BANKUNITED, N.A., a National
Bank as Administrative Agent,

    Plaintiff,

v.                        Case No. 8:15-cv-1357-T-33TBM

MILLIMAN, INC., a Washington
Corporation,

    Defendant.
_____/

**<u>ORDER</u>**

This cause comes before the Court pursuant to Defendant Milliman, Inc.'s Motion to Dismiss (Doc. # 37), filed on September 8, 2015. Plaintiff BankUnited, N.A. filed a response in opposition to the Motion on September 22, 2015. (Doc. # 39). For the reasons stated below, the Court grants Milliman's Motion to the extent set forth herein.

**I.    <u>Background</u>**

BankUnited brings this action on behalf of itself and as Administrative Agent to a lender group comprised of Capital Bank, Mercantil Commercebank, Israeli Discount Bank, and BCI Miami ("Lenders")[1]. (Doc. # 34 at 1). According to the

---

[1] Throughout this Order, the Court will refer to these banks collectively as the Lenders. However, when solely

Complaint, the Lenders "entered into a $60 million lending facility with Universal Health Care Group, Inc." ("UHG"), "pursuant to a Credit Agreement dated April 6, 2012." (Id. at ¶ 10). This Agreement was guaranteed by one of UHG's subsidiaries – American Managed Care, LLC ("AMC"). (Id.).

"In determining whether to approve the Loan, Lenders performed due diligence which consisted of reviewing business and financial information of UHG, [Universal Health Care, Inc. ('UHC') and Universal Health Care Insurance Company, Inc. ('UHCIC')]." (Id. at ¶ 16). Among the information reviewed and relied upon was "[Milliman's] work product and projections for UHC and UHCIC, which showed that the companies were solvent and on good financial footing as of 2011." (Id.). However, "[i]n reality and unknown to Lenders, UHC's and UHCIC's statutory reserves and projections were grossly misstated, and their outstanding medical claims were grossly understated for 2011." (Id.). "Indeed, rather than a significant multi-million dollar profit, UHC and UHCIC actually experienced a loss of tens of millions of dollars." (Id.).

---

addressing BankUnited, the Court will refer to it as BankUnited.

BankUnited argues that Milliman knew that third-parties, including the Lenders, would rely on the actuarial work that it did for UHG and its subsidiaries, and therefore, "had an obligation to ensure that the information in the statements of actuarial opinion that [Milliman] issued accurately portrayed the financial condition of UHG and the regulated entities." (Id. at ¶ 17). However, the Lenders posit that Milliman failed to meet its obligation when it "incorrectly certified that the regulated entities had adequate reserves to fund outstanding claims incurred but that were not reported giving UHG and the regulated entities the appearance of solvency, when, in fact, those reserves were inadequate." (Id. at ¶ 18).

BankUnited initiated this action against Milliman in state court on May 11, 2015, asserting three counts. (Doc. # 2). Count I for negligent misrepresentation. (Id.). Count II for aiding and abetting negligent misrepresentation. (Id.). Count III for aiding and abetting intentional misrepresentation. (Id.).

Milliman removed this action on June 8, 2015, on the basis of diversity jurisdiction. (Doc. # 1). Thereafter, Milliman filed a Motion to Dismiss, (Doc. # 7), which this

3

Court granted without prejudice so that BankUnited could file an amended complaint. (Doc. # 30).

On August 19, 2015, BankUnited filed an Amended Complaint with the Credit Agreement dated April 6, 2012, as an attachment. (Doc. ## 34, 34-1). The Amended Complaint asserts only two counts. (Doc. # 34). Count I for negligent misrepresentation. Count II for aiding and abetting negligent misrepresentation. (Id.).

Milliman then filed the present Motion to Dismiss. (Doc. # 37). In its Motion, Milliman argues that dismissal of this action is warranted as BankUnited lacks standing. Alternatively, Milliman argues that dismissal of this action is appropriate as BankUnited has failed to join indispensable parties pursuant to Fed. R. Civ. P. 19(a). (Id.). Milliman also argues that dismissal of Count II is appropriate, under Fed. R. Civ. P. 12(b)(6), as BankUnited has failed to state a claim. (Id.). Milliman's Motion to Dismiss is ripe for the Court's review.

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further,

4

this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

### III. Analysis

#### A. Standing

The party invoking federal jurisdiction must establish that it has standing to assert its claim. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). The requisite elements

5

of Article III standing are well established: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984).

Furthermore, an association has standing to bring suit on behalf of its members when "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n., 432 U.S. 333, 343 (1977).

In United Food, the Supreme Court held that Hunt's third-prong of associational standing is prudential in nature. United Food and Com. Workers Union Local 751 v. Brown Grp. Inc., 517 U.S. 544, 557 (1996)("Circumstantial evidence of the prudential nature of this requirement is seen in the wide variety of other contexts in which a statute, federal rule or accepted common-law practice permits one person to sue on behalf of another, even where damages are sought."). Nevertheless, "[t]o see Hunt's third-prong as resting on less than constitutional necessity is not of course, to rob it of

its value." Id. at 556. As the Court described, the third-prong is designed to "guard against the hazards of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity." Id. Also, the third-prong "may hedge against any risk that the damages recovered by the association will fail to find their way into the pockets of the members on whose behalf injury is claimed." (Id.).

Even after United Food, the Eleventh Circuit stated that "[g]enerally, an association seeking damages on behalf of its members cannot claim associational standing." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1354 (11th Cir. 2009)(citing United Food, 517 U.S. at 554). "Damages claims are incompatible with associational standing because such claims usually require 'individualized proof.'" Conn. State Dental Ass'n, 591 F.3d at 1354 (citing Warth v. Seldin, 422 U.S. 490, 515-16 (1975)).

Milliman concedes that BankUnited has standing to assert its *own claims* against Milliman, and therefore, this Court has subject-matter jurisdiction over BankUnited's claims. (Doc. # 37 at 1-2). However, Milliman contends that BankUnited's standing to assert its own claims does not give BankUnited standing to assert claims on behalf of Capital

7

Bank, Mercantil Commercebank, Israeli Discount Bank, and BCI Miami. (Id.).

In the Complaint, BankUnited alleges that it is the Administrative Agent for a lending group, which includes the Lenders. (Doc. # 34 at ¶¶ 12-15, 52-54,). According to BankUnited, it has associational standing because

> [BankUnited] served as the Administrative Agent for the Non-Party Lenders, and was the point-of-contact for issues relating to funding and managing the Loan, and calling a default thereon. After the loan went into default, the Non-Party Lenders authorized and directed [BankUnited] to assert claims against Defendant. . . and thereafter to distribute the proceeds of any recovery to the Lenders in the priority set forth in the Credit Agreement. **This directive was based on and embodied in the Credit Agreement**, the document governing the relationship between [BankUnited] and the Non-Party Lenders.

(Doc. # 39 at 1-2)(emphasis added). To that end, BankUnited points to Sections 7.2 and 8.5 of the Credit Agreement, which is attached to the Amended Complaint. (Doc. # 34-1 at 100, 103 ).

However, these two Sections do not convince the Court that BankUnited has standing. The Court agrees with Milliman that the Amended Complaint and the cited provisions of the Credit Agreement "do not cure the foundational defect that caused the Court to dismiss BankUnited's original complaint." (Doc. # 37 at 5). This Court's previous Order stated Sections

8.1 and 8.2 of the Credit Agreement did not contain an assignment or delegation for BankUnited to bring tort claims against third-parties. (Doc. # 30 at 9-10). The same is true regarding the additional Sections pointed out by BankUnited here.

Section 7.2 titled "Acceleration; Remedies" authorizes BankUnited, subject to the consent of the Lenders, to take action regarding UHG's default. Section 7.2 states:

> Upon the occurrence and during the continuance of an Event of Default, then, and in any such event, (a) if such event is a Bankruptcy Event, automatically the Commitments shall immediately terminate and the Loans (with accrued interest thereon), and all other amounts under the Credit Documents (including, without limitation, the maximum amount of all contingent liabilities under Letters of Credit) shall immediately become due and payable, and (b) **if such event is any other Event of Default, any or all of the following actions may be taken:** (i) with the written consent of the Required Lenders, the Administrative Agent may, or upon the written request of the Required Lenders, the Administrative Agent shall, declare the Commitments to be terminated forthwith, whereupon the Commitments shall immediately terminate; (ii) the Administrative Agent may, or upon the written request of the Required Lenders, the Administrative Agent shall, declare the Loans (with accrued interest thereon) and all other amounts owing under this Agreement and the Notes to be due and payable forthwith and direct the Borrower to pay to the Administrative Agent cash collateral as security for the LOC Obligations for subsequent drawings under then outstanding Letters of Credit an amount equal to the maximum amount of which may be drawn under Letters of Credit then outstanding, whereupon the same shall immediately become due and payable;

9

> **and/or (iii) with the written consent of the Required Lenders, the Administrative Agent may, or upon the written request of the Required Lenders, the Administrative Agent shall, exercise such other rights and remedies as provided under the Credit Documents and under applicable law.** The Borrower agrees to pay all costs of collection, including reasonable attorneys' fees and costs at all pretrial, trial and appellate levels with such payment allocated in accordance with Section 2.9(b) of this Agreement.

(Doc. # 34-1 at 100)(emphasis added).

Section 8.5 titled "Notice of Default" likewise, addresses default by UHG and BankUnited's ability to take reasonable action against UHG upon default, with the consent or at the direction of the Lenders. Section 8.5 states:

> The Administrative Agent shall not be deemed to have knowledge or notice of the occurrence of any Default or Event of Default hereunder unless the Administrative Agent has actual knowledge or same or has received written notice from a Lender or the Borrower referring to this Agreement, describing such Default or Event of Default and stating that such notice is a "notice of default". In the event that the Administrative Agent receives such a notice, the Administrative Agent shall give prompt notice thereof to the Lenders. **The Administrative Agent shall take such action with respect to such Default or Event of Default as shall be reasonably directed by the Required Lenders**; <u>provided</u>, <u>however</u>, that unless and until the Administrative Agent shall have received such directions, the Administrative Agent may (but shall not be obligated to) take such action, or refrain from taking such action, with respect to such Default or Event of Default as it shall deem advisable in the best interests of the Lenders except to the extent that this Agreement expressly requires that such action be taken, or not taken, only with the consent

>or upon the authorization of the Required Lenders, or all of the Lenders, as the case may be.

(Id. at 103). (emphasis added).

BankUnited argues that "[n]othing in Section 7.2 of the Credit Agreement limits [BankUnited's] exercise of its rights and remedies under applicable law, solely to UHG or AMC, or solely to contractual claims." (Doc. # 39 at 8). BankUnited also argues that in accordance with Section 8.5 of the Credit Agreement, the "Lenders directed [BankUnited] to initiate this lawsuit and assert the claims herein." (Doc. ## 34 at ¶ 15; 39 at 8-9). Just as before, the Court is unpersuaded by BankUnited's arguments. From the Court's review, both Sections 7.2 and 8.5 fail to contemplate granting BankUnited the authority to bring the claims asserted in this case against Milliman on behalf of the Lenders.

BankUnited would have the Court read the word "and" in the clause at issue—"other rights and remedies as provided under the Credit Documents and under applicable law"—disjunctively rather than conjunctively, thereby allowing BankUnited to enforce rights under the "Credit Documents" or "applicable law." In contrast, Milliman would have the Court read the same "and" in the preceding clause conjunctively so that BankUnited could only enforce rights existing under both

11

the "Credit Documents and applicable law." More problematic for BankUnited's argument is that Sections 7.2 and 8.5 do not by their plain terms refer to, contemplate or relate to third-parties. Rather, both Sections address the relationship between the Lenders and the borrower in the event of default, as well as the relationship between the former themselves. To be clear, Milliman is not a party to the Credit Agreement.

Additionally, nowhere in the Credit Agreement do the Lenders assign or give up their claims to tort damages against third-parties. Thus, if the Credit Agreement the parties signed did not contemplate delegating authority to BankUnited to bring a cause of action against a third-party under a negligence theory to recover damages from the borrower's breach, then BankUnited would not be an agent of the Lenders for that purpose. Accordingly, under the third-prong of <u>Hunt</u> 432 U.S. at 343, the prudential requirements would come into effect and exclude associational standing. <u>See</u> <u>United Food</u> 517 U.S. at 556-57; <u>see also</u> <u>Conn. State Dental Ass'n</u>, 591 F.3d at 1354. The Court finds the same hazards discussed in <u>United Food</u> are present in this case. <u>United Food</u>, 517 U.S. at 556.

Accordingly, the Court grants Milliman's Motion to the extent that BankUnited may only bring its own claims.

12

BankUnited in its role as Administrative Agent does not satisfy the requisite elements of standing to permit BankUnited to assert tort claims belonging to the Lenders.

Since BankUnited lacks standing to bring claims on behalf of the Lenders, and neither party has made a motion for joinder at this time, it is not necessary for the Court to address Milliman's argument in the alternative to order the Lenders joined as necessary parties under Rule 19.

### B. Aiding and Abetting Negligent Misrepresentation

Milliman argues that "BankUnited purports to assert a claim for aiding and abetting negligent misrepresentation—a cause of action that does not exist under Florida law." (Doc. # 37 at 13). Therefore, Milliman states the Court should dismiss Count II because BankUnited fails to state a claim upon which relief may be granted. Id. In response, BankUnited "acknowledges that there is no specific Florida case expressly holding that aiding and abetting negligent misrepresentation is a cause of action." (Doc. # 39 at 9). However, BankUnited argues that "there is also no Florida case that states it is not a valid cause of action." (Id.).

While at least one California Court has sustained a cause of action for aiding and abetting a negligent misrepresentation, this Court is unaware of any Florida case

that has done so. Furthermore, the parties do not cite—and the Court cannot find—a case from the Eleventh Circuit or any District Court in Florida recognizing such an action under Florida law. In fact, "other courts have found the concept of secondary liability for negligence to be inherently contradictory." In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 794 F. Supp. 1424, 1439 (D. Ariz. 1992)(citing Koehler v. Pulvers, 606 F. Supp. 164, 173 n.10 (S.D. Cal. 1985) and Rogers v. Furlow, 699 F. Supp. 672, 675 (N.D. Ill. 1988)). After a thorough review of the case law, and because of the clear weight of authority, this Court dismisses Count II of the Amended Complaint. Accordingly, Milliman's Motion is granted to the extent set forth above.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Milliman, Inc.'s Motion to Dismiss (Doc. # 37) is **GRANTED** as stated herein.

(2) The Amended Complaint (Doc. # 34) is dismissed without prejudice.

(3) Plaintiff BankUnited, N.A. has until **January 29, 2016,** to file a second amended complaint.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 15th day of January, 2016.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE