UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BANKUNITED, N.A., a National
Bank as Administrative Agent,
et al.,

    Plaintiffs,

v.                            Case No. 8:15-cv-1357-T-33TBM

MILLIMAN, INC., a Washington
Corporation,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Milliman, Inc.'s Motion to Dismiss Count V of the Second Amended Complaint (Doc. # 63), filed on February 22, 2016. Plaintiff BankUnited, N.A. filed a response in opposition to the Motion on March 10, 2016. (Doc. # 65). For the reasons stated below, the Court grants the Motion.

**I.**    **Background**

BankUnited, Capital Bank, Mercantil Commercebank, and Israel Discount Bank bring this action for negligent misrepresentation against Defendant Milliman, Inc. (Doc. # 61). According to the Second Amended Complaint, Plaintiffs and non-party bank BCI Miami (collectively "Lenders")

"entered into a $60 million lending facility with Universal Health Care Group, Inc." ("UHG"), "pursuant to a Credit Agreement dated April 6, 2012." (Id. at ¶ 10).

"In determining whether to approve the Loan, Lenders performed due diligence which consisted of reviewing business and financial information of UHG, Universal Health Care, Inc. ('UHC') and Universal Health Care Insurance Company, Inc. ('UHCIC')." (Id. at ¶ 12). Among the information reviewed and relied upon was "[Milliman's] work product and projections for UHC and UHCIC, which showed that the companies were solvent and on good financial footing as of 2011." (Id.). However, "[i]n reality and unknown to Lenders, UHC's and UHCIC's statutory reserves and projections were grossly misstated, and their outstanding medical claims were grossly understated for 2011." (Id.). "Indeed, rather than a significant multi-million dollar profit, UHC and UHCIC actually experienced a loss of tens of millions of dollars." (Id.).

Plaintiffs argue that Milliman knew that third parties, including the Lenders, would rely on the actuarial work that it did for UHG and its subsidiaries, and therefore, "had an obligation to ensure that the information contained in the financial statements . . . accurately portrayed the financial

2

condition of UHG and its subsidiaries." (Id. at ¶ 14). However, Milliman failed to meet its obligation when it "incorrectly certified that the regulated entities had adequate reserves to fund outstanding claims incurred . . . giving UHG and the regulated entities the appearance of solvency, when, in fact, those reserves were inadequate." (Id. at ¶ 15).

On August 19, 2015, BankUnited filed an Amended Complaint. (Doc. # 34). On September 8, 2016, Milliman filed a Motion to Dismiss the Amended Complaint (Doc. # 37), which the Court granted. (Doc. # 53). Particularly relevant here, the Court found that "BankUnited in its role as Administrative Agent does not satisfy the requisite elements of standing to permit BankUnited to assert tort claims belonging to the Lenders." (Doc. # 53 at 13).

On February 4, 2016, BankUnited filed an Unopposed Motion for Joinder, which the Court granted, seeking to join Capital Bank, Mercantil, and Israel Discount Bank as Plaintiffs in this action. (Doc. ## 60, 62). The fifth Lender, BCI Miami, declined the opportunity to join as a Plaintiff. (Doc. # 61 at ¶ 5). On February 5, 2016, the Plaintiffs filed a Second Amended Complaint. (Doc. # 61).

3

The Second Amended Complaint asserts five counts of negligent misrepresentation against Milliman. Counts I through IV are brought by BankUnited, Capital Bank, Mercantil, and Israel Discount Bank, respectively. (Id.). Count V is brought by "BankUnited, in its capacity as Administrative Agent on behalf of itself and the other Lenders." (Id. at ¶ 139).

Milliman then filed the present Motion to Dismiss. (Doc. # 63). In its Motion, Milliman argues that dismissal of Count V is warranted because BankUnited lacks standing to bring a negligent misrepresentation claim against Milliman on behalf of the other Lenders. (Id.).

## II. Analysis

The party invoking federal jurisdiction must establish that it has standing to assert its claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The requisite elements of Article III standing are well established: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984).

Furthermore, an association has standing to bring suit on behalf of its members when "(1) its members would otherwise

have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n., 432 U.S. 333, 343 (1977).

As the Court described in United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., the third prong of Hunt is designed to "guard against the hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity." 517 U.S. 544, 556 (1996). Also, the third prong "may hedge against any risk that the damages recovered by the association will fail to find their way into the pockets of the members on whose behalf injury is claimed." (Id.).

Providing further clarification, the Eleventh Circuit stated that "[g]enerally, an association seeking damages on behalf of its members cannot claim associational standing." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1354 (11th Cir. 2009) (citing United Food, 517 U.S. at 554). "Damage claims are incompatible with associational standing because such claims usually require

5

'individualized proof.'" Conn. State Dental Ass'n, 591 F.3d at 1354 (citing Warth v. Seldin, 422 U.S. 490, 515-16 (1975)). This requirement of individualized proof "run[s] afoul of the third prong for associational standing enunciated in Hunt." Borrero v. United Healthcare of N.Y., Inc., 610 F.3d 1296, 1305 (11th Cir. 2010).

Milliman contends that this Court should dismiss Count V of the Second Amended Complaint because BankUnited lacks standing to bring tort claims belonging to the other Lenders, including non-party BCI Miami. (Doc. # 63 at 5-7). BankUnited responds that "this claim does not belong to any party other than BankUnited." (Doc. # 65 at 2). To this end, BankUnited argues that Count V is the Administrative Agent's claim because "BankUnited, as administrative agent, was the only party with authority to declare a default under the Credit Agreement." (Id.).

On two occasions, this Court determined that the Credit Agreement does not give BankUnited standing to bring tort claims on behalf of the other Lenders because it contains no assignment or delegation of such authority to BankUnited. (Doc. ## 30 at 9-10; 53 at 12). The Court agrees with Milliman that "[n]othing in the Second Amended Complaint changes that conclusion." (Doc. # 63 at 7).

BankUnited brings Count V against Milliman "in its capacity as Administrative Agent on behalf of itself and the other Lenders." (Doc. # 61 at ¶ 139). BankUnited points to Sections 7.2 and 8.5 of the Credit Agreement as the basis of its authority to take actions in the best interests of the Lenders. (Id. at ¶ 147). However, as this Court previously determined, "Sections 7.2 and 8.5 do not by their plain terms refer to, contemplate, or relate to third-parties. Rather, both Sections address the relationship between the Lenders and the borrower in the event of default, as well as the relationship between the [Lenders] themselves." (Doc. # 53 at 12). Thus, the Credit Agreement does not give BankUnited standing to bring claims on behalf of the other Lenders against Milliman, a third party to the Credit Agreement.

BankUnited submits that Count V is distinguishable because it brings a claim against Milliman for its actions or inactions that "delayed BankUnited's ability to declare a default and take actions under the Credit Agreement to preserve the collateral and recover monies due and owing." (Doc. # 65 at 3). According to BankUnited, it was the only Lender that could declare a default under the Credit Agreement. (Id.). As a result, BankUnited alleges it

experienced a distinct injury in its capacity as Administrative Agent. (Id.).

Even assuming BankUnited had the sole authority to declare a default, Count V does not assert any damages that BankUnited sustained in its capacity as Administrative Agent. Rather, Count V alleges "BankUnited was precluded from calling a default under the Loan at the earliest possible moment, proximately causing damages **to the Lenders** in excess of $30,000,000." (Doc. # 61 at ¶ 154) (emphasis added). Although BankUnited submits that this claim belongs exclusively to the Administrative Agent, the phrase "to the Lenders" indicates that all five Lenders, including non-party BCI Miami, sustained these damages. Thus, the Court finds the same hazards discussed in United Food are present in Count V. United Food, 517 U.S. at 556.

The Court grants Milliman's Motion to Dismiss Count V of the Second Amended Complaint. After considering the allegations in the Second Amended Complaint and the terms of the Credit Agreement, the Court is not convinced that BankUnited has standing to proceed on Count V.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

8

(1) Defendant Milliman, Inc.'s Motion to Dismiss Count V of the Second Amended Complaint (Doc. # 63) is **GRANTED**.

(2) Count V of the Second Amended Complaint (Doc. # 61) is dismissed without leave to amend.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th day of April, 2016.

_/s/ Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

9